## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| VILMA SERANNO S.<br> *Plaintiff*,<br><br>v.<br><br>Kilolo KIJAKAZI,<br>Acting Commissioner of the Social<br>Security Administration,<br> *Defendant*. | ) 3:22-CV-00214 (KAD)<br>)<br>)<br>)<br>)<br>) MARCH 31, 2023<br>)<br>)<br>)<br>) |

### MEMORANDUM OF DECISION

Kari A. Dooley, United States District Judge:

  The Plaintiff, Vilma Serrano S. ("Plaintiff"), brings this administrative appeal pursuant to 42 U.S.C. § 405(g). She appeals the decision of defendant Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("Administration"), denying her application for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act (the "Act"). Plaintiff moves to reverse the Commissioner's decision insofar as the Administrative Law Judge ("ALJ") did not properly develop the administrative record, did not properly evaluate the severity of her symptoms, and made findings regarding job incidence numbers unsupported by the record. Alternatively, she seeks a remand for further proceedings before the Commissioner. In response, the Commissioner asserts that the ALJ's decision is supported by substantial evidence in the record and is based upon the correct application of legal standards, and thus should be affirmed. For the reasons set forth below, the Plaintiff's Motion to Reverse, ECF No. 19, is DENIED and the Commissioner's Motion to Affirm, ECF No. 23, is GRANTED.

1

**Standard of Review**

A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). In addition, a claimant must establish that their physical or mental impairment or impairments are of such severity that they are not only unable to do their previous work but "cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." *Id.* § 423(d)(2)(A).

Pursuant to regulations promulgated by the Commissioner, a five-step sequential evaluation process is used to determine whether a claimant's condition meets the Act's definition of disability. *See* 20 C.F.R. § 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509" or a combination of impairments that is severe and meets the duration requirements; (3) if such a severe impairment is identified, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations[1]; (4) if the claimant does not establish the "meets or equals" requirement, the Commissioner must then determine the claimant's residual functional capacity ("RFC") to perform their past relevant

---

[1] Appendix 1 to Subpart P of Part 404 of C.F.R. 20 is the "Listing of Impairments."

work; and (5) if the claimant is unable to perform their past work, the Commissioner must finally determine whether there is other work in the national economy which the claimant can perform in light of their RFC, education, age, and work experience. *Id.* §§ 404.1520(a)(4)(i)–(v); 404.1509. The claimant bears the burden of proof with respect to Steps One through Four and the Commissioner bears the burden of proof as to Step Five. *See McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).

The fourth sentence of Section 405(g) of the Act provides that a "court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . with or without remanding the case for a rehearing." 42 U.S.C. § 405(g). And it is well settled that a district court will reverse the decision of the Commissioner only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive…"). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). The court does not inquire as to whether the record might also support the plaintiff's claims but only whether there is substantial evidence to support the Commissioner's decision. *Bonet ex rel. T.B. v. Colvin,* 523 Fed. Appx. 58, 59 (2d Cir. 2013). Thus, substantial evidence can support the Commissioner's findings even if there is the potential for drawing more than one conclusion from the record. *See Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). The court can only reject the Commissioner's findings of facts "if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012). Stated simply, "if there

is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013).

**Factual and Procedural History**

On October 31, 2017, Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income, alleging an onset date of January 1, 2017. Her claim was initially denied on February 6, 2018. At Plaintiff's request, a hearing was held on May 23, 2019. The ALJ issued a decision denying Plaintiff's application on June 19, 2019. Upon further review, the Appeals Council denied her claim on June 29, 2020. Plaintiff appealed this decision to the district court. In that appeal, the parties consented to a remand of the matter for further administrative proceedings because the ALJ had mistakenly relied upon evidence in the record pertaining to an individual other than Plaintiff. A second hearing was held on October 7, 2021, after which the ALJ again found that Plaintiff was not disabled.

In his written decision dated October 27, 2021, the ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since the alleged onset date, January 1, 2017, through the date of last insured, December 31, 2022. At Step Two, the ALJ determined that Plaintiff has multiple severe impairments: lumbar degenerative disease status post lumbar fusion surgery, thoracic degenerative disc disease, cervical degenerative disc disease post cervical fusion surgery, an anxiety disorder, a mood disorder, obesity, and left hip osteoarthritis. At Step Three, however, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1. At Step Four, the ALJ found that Plaintiff has the RFC to perform sedentary work[2] subject to several limitations, to

---

[2] Defined in 20 C.F.R. 404.1567(a) as involving "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files ledgers, and small tools. Although a sedentary job is defined as one which involves

4

include that Plaintiff could only occasionally reach overhead; occasionally climb ramps and stairs, but could not climb ladders, ropes or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to vibration; could not work at unprotected heights or operate machinery having moving mechanical parts that are exposed; could work in environments with a moderate noise level; and could perform simple, routine tasks and tolerate occasional interaction with the general public and coworkers. And lastly, at Step Five, the ALJ determined that Plaintiff cannot perform her past relevant work as a customer service clerk and retail manager trainee, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.[3] Accordingly, the ALJ concluded that Plaintiff was not disabled under Sections 216(i), 223(d) and 1614(a)(3)(A) of the Act from January 1, 2017 through December 31, 2022. This timely appeal followed.

**Discussion**[4]

Plaintiff first argues that the ALJ failed to adequately develop the record, as it contains no medical source statement from various medical professionals who treated her. Second, Plaintiff argues that the ALJ's findings at Step Two are flawed because he found many of her impairments to be non-severe and/or not medically determinable. Additionally, Plaintiff challenges the ALJ's combination of impairments analysis. And lastly, Plaintiff argues that the ALJ's Step Five findings are unsupported with respect to the VE's testimony regarding job incidence data. In response, the Commissioner avers that the ALJ properly developed the administrative record, evaluated the

---

sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

[3] These were identified by Christine DiTrinco, the Vocational Expert ("VE") who testified at the hearing, as: (1) document preparer, 249.587-018, SVP 2, exertional level sedentary, 18,988; (2) assembler, 734.687-018, SVP 2, exertional sedentary, 10,452; and (3) final assembler, 713.687-018, SVP 2, exertional level sedentary, 10,172.

[4] In light of the Eighth Circuit's ruling in *Brian T. D. v. Kijakazi*, 22-1601 (issued March 7, 2023), that SSA Acting Commissioner Nancy Berryhill was properly serving as Acting Commissioner when she ratified ALJ appointments, the Court does not further address Plaintiff's argument that the ALJ was not constitutionally appointed.

severity of Plaintiff's impairments and symptoms, and relied on the VE's testimony on job incidence numbers. The Court agrees with the Commissioner.

*1. The ALJ Did Not Fail to Develop the Administrative Record*

Plaintiff avers that the record lacks medical source statements from multiple doctors and nurses who treated her. The Commissioner argues that the ALJ was not required to seek medical source statements from Plaintiff's myriad of treatment providers. The Court agrees with the Commissioner that the ALJ had sufficient information in this extraordinarily voluminous record, to include multiple medical opinions, with which to determine Plaintiff's RFC. Accordingly, the ALJ had no further obligation, on this record, to seek additional opinion evidence.

Because Plaintiff filed her application for benefits after March 27, 2017, the "treating physician rule," codified in 20 C.F.R. §§ 404.1527 and 416.927, does not apply to her claims. For claims filed on or after March 27, 2017, the ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Still, the Commissioner has a duty to develop a complete medical record prior to making a disability determination. *See* 20. C.F.R. § 404.1512(b); *see also Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 509 (2d Cir. 2009) (finding that an ALJ must affirmatively develop the record on behalf of all claimants due to the non-adversarial nature of a benefits proceeding). However, the ALJ is not required to further develop the record "when the evidence already presented is adequate…to make a determination as to disability." *Janes v. Berryhill*, 710 F. App'x 58, 59 (2d Cir. 2018) (internal quotations omitted); *see also Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996). An ALJ must only seek additional evidence where there are "obvious gaps" in the administrative record. *See Cote v. Berryhill*, No. 3:17cv95 (WWE), 2018 WL 1225543, at *3 (D. Conn., Mar. 9, 2018); *see also, e.g.*, *Perez*, 77 F.3d at 48 (finding that

when there is an "adequate" record upon which to make a disability determination, an ALJ does not fail to develop the record by not soliciting more information) *and Rusin v. Berryhill*, 726 F. App'x. 837, 840 (2d Cir. 2018) (finding where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ has no obligation to seek additional information).

Here, the ALJ had voluminous treatment records spanning many years. The ALJ also had the opinions of a consulting medical expert, Dr. Omar Hussamy, Plaintiff's primary care physician, Charles Mandelberg, as well as Dr. Robert Hughes and Dr. Firooz Golkar. The ALJ also considered the opinions of Plaintiff's treating psychologist, Dr. Amanda Williams, as well as the prior assessments of Dr. Katrin Carlson and Dr. Stacey Fiore. The ALJ discussed in detail each of these opinions, in the context of the longitudinal medical treatment records, and afforded them varying degrees of "persuasiveness." What is most notable, with the exception of Dr. Mandelberg's opinion, is that where the ALJ found the opinion "partially persuasive," he generally found that the record evidence supported greater restrictions than those identified. For example, both Drs. Hughes and Golkar opined that Plaintiff could perform "light work." But the ALJ determined that the records submitted since the time of the opinion supported a more restrictive RFC. *See* ALJ Dec., ECF No 10, at 15. And in rejecting Dr. Mandelberg's "opinion," which took the form of a two-line email in which he indicated that Plaintiff's limitations were disabling, the ALJ noted that Dr. Mandelberg's treatment records from the same time contradicted that opinion. *See id.* Plaintiff does not acknowledge the ALJ's assessment and summarily asserts that he was required to seek additional opinion evidence. But she provides no support for her argument and ignores that the available evidence was "adequate for [the ALJ] to make a determination as to a disability." *Janes*, 710 F. App'x at 34 (internal quotation marks and citation omitted). Indeed, the

7

ALJ's detailed review of the medical record and discussion of the available opinions, *see* ALJ Dec. 9–14, defeat Plaintiff's claim. Accordingly, based on the ALJ's thorough review and evaluation of the ample evidence, the Court finds no error regarding the ALJ's duty to develop the record.

   2. *The ALJ Properly Evaluated the Existence and Severity of Plaintiff's Impairments*

  Plaintiff argues that the ALJ found certain impairments (headaches, an asymptomatic small aneurysm, goiter, hypothyroidism, gastro-esophageal reflux disease (GERD), hemorrhoids status post hemorrhoidectomy, mixed irritable bowel syndrome, and anal fissure status post repair surgery) to be non-severe against the weight of the evidence in the record. She also argues that the ALJ's analysis of her fibromyalgia should have resulted in the acceptance of the condition as a medically determinable impairment. And lastly, that the ALJ failed to properly evaluate Plaintiff's pain. The Commissioner avers that the ALJ adequately considered the severity of all Plaintiff's impairments. The Court agrees with the Commissioner.

  It is the claimant who bears the burden of providing evidence establishing the severity of the condition. *See Bailey v. Berryhill*, No. 3:18-cv-00013 (WIG), 2019 WL 427320, at *3 (D. Conn. Feb. 4, 2019); *see also Smith v. Berryhill*, 740 F. App'x 721 (2d Cir. 2018) (finding that a claimant had the duty to prove a more restrictive RFC but failed to do so). Where a lack of supporting evidence on a matter for which the claimant bears the burden is combined with other inconsistent record evidence, an ALJ has substantial evidence to support a denial of benefits. *See Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015). And it is not the role of the Court to review the record *de novo*. *See generally Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998); *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise") (internal quotation marks and citation omitted). The "mere presence of diagnosis of a disease, impairment, or treatment thereof is not, by itself, sufficient to

8

render a condition severe." *Theresa R. v. Kijakazi*, No. 3:20 CV 1885, (SRU), 2022 WL 707159, at *5 (D. Conn. Feb. 15, 2022), *report & rec. adopted,* No. 320CV01885 (SRU) (RMS), 2022 WL 705311 (D. Conn. Mar. 9, 2022). And where there is an error at Step Two, it is harmless when the ALJ considers the non-severe impairments at subsequent steps in his or her analysis. *See Rivera v. Colvin*, 592 F. App'x 32, 22 (2d Cir. 2015) ("[E]ven assuming that the ALJ erred at step two, this error was harmless, as the ALJ considered both [Plaintiff's] severe and non-severe impairments as he worked through the later steps.").

The Court determines that the ALJ has substantial evidence to support his findings regarding the severity of Plaintiff's impairments. He acknowledged diagnoses in the record for headaches, an asymptomatic small aneurysm, goiter, hypothyroidism, gastro-esophageal reflux disease (GERD), hemorrhoids status post hemorrhoidectomy, mixed irritable bowel syndrome, and anal fissure status post repair surgery, but points to treatment evidence which establishes that none of these conditions caused more than minimal functional limitations for at least a period of twelve months. *See* ALJ Dec. at 4. Plaintiff challenges the durational basis for determining that these impairments were non-severe. She does not, however, point to record evidence from which the ALJ should have found that these impairments caused more than minimal functional limitations, regardless of their durational impact. But more to the point, the ALJ acknowledged that he considered all these impairments in his formulation of Plaintiff's RFC. *See id.* And, as the Commissioner notes, that the ALJ did so is manifest. The ALJ explicitly referenced Plaintiff's chronic headaches in the RFC analysis, including a "limitation to environments with no more than a moderate/office noise level." *See id.* at 13. The ALJ is not obligated to reference all non-severe impairments in the denial of benefits if he considered them, which clearly happened here. *See Brault*, 683 F.3d at 448 (finding that an ALJ is not required to discuss every piece of evidence

9

submitted and the failure to cite specific evidence does not indicate that such evidence was not considered).

As to Plaintiff's fibromyalgia, the ALJ properly relied on Social Security Ruling 12-2p, *Titles II and XVI: Evaluation of Fibromyalgia* (2012 WL 3104869), which requires a claimant to provide evidence and treatment records from an acceptable medical source that produce findings consistent with a diagnosis under either the *1990 ACR Criteria for the Classification of Fibromyalgia* or the *2010 ACR Preliminary Diagnostic Criteria*. Finding that the record evidence failed to establish and support such a diagnosis under either set of diagnostic criteria, the ALJ found the fibromyalgia not to be a medically determinable impairment. *See* ALJ Dec. at 5. Plaintiff merely relies upon the diagnosis itself, rather than providing evidence that complies with SSR 12-2p. Notwithstanding, in formulating the RFC, the ALJ examined Plaintiff's multiple evaluations by her treating rheumatologist, Dr. William Traverse, and observed that these examinations yielded only mild findings from June 2018 through April 2019. *See* ALJ Dec. 10–12.

Lastly, Plaintiff argues that the ALJ's analysis of her chronic pain is deficient. The Court disagrees. Throughout his decision, the ALJ discussed Plaintiff's pain and considered it in forming the RFC. *See id.* at 7–17. For example, in limiting Plaintiff to simple, routine tasks involving only occasional interaction with the public and others, the ALJ explicitly cited to the claimant's allegation of "at least intermittent neck and spinal pain with some intermittent radiation to her upper and lower extremities including her left hip." *See id.* at 13. Elsewhere, the ALJ found some of Plaintiff's subjective complaints of pain not entirely consistent with the evidence in the record. While an ALJ is required to consider the claimant's reports of pain, he or she is "not required to accept the claimant's subjective complaints without question." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (finding that the ALJ may consider the claimant's daily restrictions, activities, and

efforts to work). The ALJ "may exercise discretion in weighing the credibility of the claimant's testimony in light of evidence in the record." *Barry*, 606 F. App'x at 622. Upon review of the ALJ's findings, the Court defers to the Commissioner's "resolution of conflicting evidence." *Cage v. Comm'r Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

Here, the ALJ noted that at least some medical records showed that Plaintiff ambulated without the use of an assistive device; that the Plaintiff went to the gym twice per week during the course of her treatment; and that she started a new job in October 2018. The ALJ also determined multiple places in the record in which Plaintiff's alleged limitations did not match the objective physical examination results. *See* Def. Mem. at 21.[5] Although Plaintiff clearly disagrees with the Commissioner's findings, she advances no record-based argument that the ALJ's determinations are not supported by substantial evidence. Rather, she seeks an alternative outcome on the same record evidence. It is not, however, the role of the Court to review the record *de novo*. *See generally Yancey*, 145 F.3d at 111; *Brault*, 683 F.3d at 448 (the Court can reject the Commissioner's findings "only if a reasonable factfinder would have to conclude otherwise") (internal quotation marks and citation omitted). The Court's standard of review is "so deferential that there could be two contrary rulings on the same record and both may be affirmed as supported by substantial evidence." *Cage* 692 F.3d at 127. Because the ALJ's findings are supported by substantial evidence, the Court finds no error.

    3. *The ALJ Properly Relied on the VE's Job Incidence Testimony*[6]

---

[5] The Court cites to the Commissioner's memorandum here in lieu of citing to the plethora of record citations that support the Commissioner's argument on this point.

[6] The Court does not address Plaintiff's argument that the hypotheticals posed by the ALJ were defective because it is well settled that the ALJ may rely on a VE's testimony responses to hypothetical questions that reflect the RFC of which the ALJ ultimately finds Plaintiff is capable. *See Smith*, 740 F. App'x at 726–27.

11

At Step Five, an ALJ must determine that significant numbers of jobs exist in the national economy that a claimant can perform. *See McIntyre*, F.3d 146 at 150; *see also Brault*, 683 F.3d 443 at 445 (finding that at Step Five, the burden "shift[s] to the Commissioner to show there is other work that [the claimant] can perform."). The ALJ can make this determination by either applying the Medical Vocational Guidelines—not applicable here—or by adducing testimony of a vocational expert ("VE"). *See Brault*, F.3d 146 at 151 (citation omitted). A VE's testimony may constitute substantial evidence where the VE has "identified the sources he generally consulted to determine" the number of jobs available in the national economy but there is no requirement for the VE to "identify with greater specificity the source of his figures or to provide supporting documentation." *Seneschal v. Berryhill*, No. 3:18-cv-00015 (RMS), 2019 WL 1075606, at *4 (D. Conn. Mar. 7, 2019) (quoting *Brault*, 683 F.3d 443 at 450). For example, an ALJ does not err when he relies on a vocational expert's testimony that is based on "personal experience, labor market surveys, and published statistical sources in determining the number of jobs available." *Martinez v. Berryhill*, No. 3:17-cv-00843 (SRU), 2019 WL 1199393, at *18 (D. Conn. Mar. 14, 2019); *see also Debiase v. Saul*, No. 3:19CV00068 (RMS), 2019 WL 5485269, at *11 (D. Conn. Oct. 25, 2019).

In *Biestek,* the Supreme Court addressed the contours of a VE's testimony and the circumstances under which it could constitute substantial evidence to support an ALJ's Step Five determination. *See Biestek v. Berryhill*, 139 S. Ct. 1148 (2019). There, the VE had attested that her testimony as to the nature and number of jobs in the national economy which the plaintiff could perform derived from Department of Labor statistics as well as surveys she had conducted with her own clientele. *Id.* at 1153. The expert balked when asked to produce the data from the private survey, and the ALJ interjected that the data need not be provided. *Id.* On appeal, the disability

claimant asserted that because the VE refused to provide the requested data, as a matter of law, the testimony could not "clear the substantial evidence bar." *Id*. The Supreme Court rejected this categorical approach:

> Sometimes, an expert's withholding of such data, when combined with other aspects of the record, will prevent her testimony from qualifying as substantial evidence. That would be so, for example, if the expert has no good reason to keep the data private and her testimony lacks other markers of reliability. But sometimes the reservation of data will have no such effect. Even though the applicant might wish for the data, the expert's testimony still will clear (even handily so) the more-than-a-mere-scintilla threshold. The inquiry as is usually true in determining the substantiality of evidence, is case by case.

*Id.* at 1157. And in dicta, the Supreme Court confirmed that even "assuming no demand, a vocational expert's testimony *may* count as substantial evidence even when unaccompanied by supporting data." *Id.* at 1155 (emphasis added). The reviewing court must consider "all features of the vocational expert's testimony, as well as the rest of the administrative record." *Id.* at 1157. And although the ALJ's analysis deserves a certain amount of deference, *Brault* establishes that "[a]s deferential as the 'substantial evidence' standard is, it is also extremely flexible" because it "gives federal courts the freedom to take a case-specific, comprehensive view of the administrative proceedings, weighing all the evidence to determine whether it was 'substantial.'" 683 F.3d at 449. Since *Biestek*, at least one court in this District has identified factors other than source data, including the VE's "credentials, history of testimony…ability to answer the ALJ and attorney's questions, and the alleged basis for her testimony," that may be relevant in determining whether the substantial evidence standard is met. *Keovilay v. Berryhill*, No. 3:19-cv-0735 (RAR), 2020 WL 3989567, at *9 (D. Conn. Jul. 15, 2020).

Here, the VE testified that her national job incidence data came from Job Browser Pro, a software program. *See* Oct. 7, 2021 Hearing Trans., ECF No. 10, at 33. Additionally, the VE's resume outlining her experience and qualifications was admitted into the record. *See id.* at 28. With

13

respect to the hypothetical limitations posed by the ALJ, the VE testified that her opinions derived from her "professional experience and analyses of how the jobs are performed." *Id.* at 32. Additionally, she testified that to answer the ALJ's hypotheticals, she drew upon her experience in seeing all three jobs performed in the labor market. *Id.* at 32–33. Yet, Plaintiff argues that the VE's job incidence numbers were inaccurate, as they did not match the numbers her counsel had compiled from Job Browser Pro. Plaintiff further argues that the ALJ prevented adequate cross-examination at the hearing, where her counsel sought to ask the VE about the discrepancy in the numbers.

The ALJ rejected Plaintiff's "standing objection" to the job numbers provided by the VE, because her counsel, Attorney Shapiro, did not provide details as to the basis of that objection, other than his own opinion that the VE was wrong. Attorney Shapiro also requested a printout of the job numbers testified to by the VE, which the ALJ denied, as the "claimant's representative is not a qualified vocational expert and did not provide any evidence establishing that he has the requisite professional vocational education, training and experience to be considered a qualified vocational expert." Accordingly, the ALJ found that the job numbers generated by Attorney Shapiro could not be presumed to be accurate or reliable. *See* ALJ Dec. at 19.

The VE need not "identify with greater specificity the source of his figures or to provide supporting documentation" as long as he "identified the sources he generally consulted to determine such figures." *Brault*, 683 F.3d at 451. Here, the VE provided multiple sources used to fashion her testimony, clearing the substantial evidence bar. With such a deferential and flexible standard of review, this Court sees no reason to question the ALJ's reliance on the VE's testimony

in this case.[7] *See Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("The ALJ was entitled to credit [the VE's] testimony, and we will not disturb that finding based upon [Plaintiff's] conclusory proclamations to the contrary."); *see also Crespo v. Comm'r of Soc. Sec.*, No. 3:18CV00435 (JAM), 2019 WL 4686763, at *9 (D. Conn. Sept. 25, 2019) ("[T]he substantial evidence standard does not foreclose an ALJ from relying on the expertise of a vocational expert and to do so without requiring the expert to lay a further foundation about the sources that the expert has consulted in order to arrive at the expert's job-number information.").

Finally, the Court disagrees with Plaintiff's assertion that the ALJ did not allow her counsel to adequately cross examine the VE. This is not a fair characterization of the record. On multiple occasions, the ALJ encouraged Attorney Shapiro to pose questions to the VE. What he would not allow, however, was Plaintiff's counsel to testify to his own understanding of job incidence numbers purportedly pulled from the same software used by the VE. The ALJ specifically directed Attorney Shapiro "—ask her a question, but don't testify, Counsel. Ask her a question. Direct her to…"; "Well, Counsel, I don't want you to testify here. If you have a question for the vocational expert—please direct those questions." *See* Hearing Trans. at 36, 38. The ALJ further clarified that the VE stood by her original testimony regarding the Job Browser numbers and that her answers had not changed despite Attorney Shapiro's cross-examination. Again, given the flexibility of the substantial evidence standard, the Court holds that VE testimony that draws on reports obtained from Job Browser Pro can satisfy the Commissioner's burden at Step Five. *See Purdy v. Berryhill*, 887 F.3d 7, 16–17 (1st Cir. 2018) (finding that there was no legal error in an ALJ's judgment to rely on testimony from a VE rooted in data taken from Job Browser Pro).

---

[7] Plaintiff cites to a Seventh Circuit case, *Ruenger v. Kijakazi* (23 F. 4th 760), that stands for the proposition that when a claimant challenges job-number estimates, the ALJ must compel the VE to explain the methodology used to produce the estimate. Plaintiff cites to no case within the Second Circuit that imposes the same obligation.

**Conclusion**

For the foregoing reasons, the Plaintiff's Motion to Reverse, ECF No. 19, is DENIED and the Commissioner's Motion to Affirm, ECF No. 23, is GRANTED. The Clerk of the Court is directed to enter Judgment in favor of Defendant and close the file.

**SO ORDERED** at Bridgeport, Connecticut this 31st day of March 2023.

                               */s/ Kari A. Dooley*
                               KARI A. DOOLEY
                               UNITED STATES DISTRICT JUDGE